[No. 28722. Department One. December 17, 1942.]

OLYMPIC MOTORS, INC., *Appellant,* v. FLOYD T. McCROSKEY *et al., Respondents.*[1]

*Carl R. Heussy, Stewart N. Lombard,* and *Lester T. Parker,* for appellant.

*The Attorney General, Stanbery Foster,* and *Jess N. Rosenberg, Assistants,* for respondents.

[1]Reported in 132 P. (2d) 355.

MILLARD, J.—Plaintiff corporation is a dealer in automobiles and trucks. As a part of its business, it sells motor vehicles on conditional sales contract, under the provisions of which the title to the vehicle is retained by plaintiff seller until full performance by the purchaser of all of the conditions of the contract. Those contracts also provide for repossession of the vehicles by plaintiff in the event of a default by the purchaser.

Plaintiff repossessed a number of motor vehicles pursuant to the conditional sales contracts. Plaintiff made regular reports to the state tax commission for the years 1938 and 1939, at which times plaintiff paid the sales tax upon the amount of the conditional sales after deduction therefrom of the unpaid balances due upon the conditional sales contracts under which it had repossessed the vehicles.

On threat of the state tax commission to collect the taxes by distraint by virtue of tax commission rule 203 authorized by Laws of 1935, chapter 180, p. 844, § 208, if plaintiff refused the commission's demand of payment of a sales tax upon the deductions of unpaid balances described above, plaintiff instituted this action to restrain the commission on the theory that rule 203 is void, in that it is not authorized by any of the provisions of Laws of 1935, chapter 180.

Plaintiff's second cause of action challenges the validity of rule 108 promulgated by the tax commission, which contemplates the exaction of sales tax upon the sales price of an article taken in trade when that article is resold.

Defendant's demurrer on the ground that the complaint did not state facts sufficient to constitute a cause of action was sustained, and judgment of dismissal was entered. Plaintiff appealed.

Two questions are presented by this appeal: (1) Where property is sold under a conditional sales con-

tract and is repossessed after part payment, is the sales tax to be computed on the full amount of the sale or only upon amounts actually collected thereunder? (2) Is a "trade-in" delivered by the purchaser to a seller as part of the purchase price subject to a sales tax? Stated another way, the second question is: May a sales tax be exacted upon the sales price of an article taken in trade when that article is resold?

The sales tax statute (Laws of 1935, chapter 180, as amended by Laws of 1939, chapter 225, p. 976) imposes an excise tax on retail sales of personal property which shall be paid by the buyer to the seller, who is required to collect from the buyer the full amount of the tax payable in respect to each taxable sale, which tax required to be collected by the seller shall be deemed to be held in trust by the seller until paid to the state tax commission.

The tax commission is authorized by Laws of 1935, chapter 180, § 208, to prescribe rules in conformity to the statute necessary in enforcing provisions of the revenue act. Pursuant to that grant of power, the tax commission promulgated rule 203, which reads as follows:

"Persons making conditional sales or other installment sales of tangible personal property must report the total selling price of such sales in the bi-monthly tax period in which the contracts of sale are entered into.

"The foregoing is true irrespective of the fact that such sellers arrange to receive payment of tax in installments or that a contract may be discounted or pledged with or sold to a finance company. In the latter case, although as a part of the agreement with the seller the finance company actually makes collection of the tax from the buyer as the installments fall due, the finance company should not report to the Tax Commission in the amount of tax collected since the total tax already has been reported by such seller.

"No deduction for credit losses in case of repossession is allowed under the Retail Sales Tax or Compensating Tax."

The statute provides that, from and after the first day of May of each year, there is levied and there shall be collected a tax on each retail sale equal to a specified per cent of the *selling price*. Laws of 1941, chapter 76, p. 195, § 2 [Rem. Supp. 1941, § 8370-16].

The pertinent statutory provisions defining terms read as follows:

". . . The term 'selling price' means the consideration, whether money, credits, rights, or other property, expressed in the terms of money, paid or delivered by a buyer to a seller, all without any deduction on account of the cost of tangible property sold, the cost of materials used, labor costs, interest, discount, delivery costs, taxes or any other expenses whatsoever paid or accrued and without any deduction on account of losses; . . . .

"The meaning attributed, in title II of this act, to the words and terms . . . 'sale' . . . shall apply equally in the provisions of this title." § 8, chapter 178, p. 493, Laws of 1941 [Rem. Supp. 1941, § 8370-17].

"The word 'sale' means any transfer of the ownership of, title to, or possession of property for a valuable consideration and includes any activity classified as a 'sale at retail' or 'retail sale' under sub-section (d) of this section. It includes conditional sale contracts, leases with option to purchase, and any other contract under which possession of the property is given to the purchaser but title is retained by the vendor as security for the payment of the purchase price. . . ." § 2, chapter 178, p. 483, Laws of 1941 [Rem. Supp. 1941, § 8370-5].

Our sales tax statute from the time of its origin in 1935 has provided for the levy and collection of a tax on *each* retail *sale* in this state equal to a specified per cent of the *selling price*; that is, the imposition of the

tax is upon each sale at the rate of a specified per cent of the selling price and not upon the amount collected.

The legislature defined "selling price" as the consideration, whether money, credits, rights, or other property, expressed in the terms of money, paid or delivered by a purchaser to a seller for the transfer of the ownership of, or title to, property, without any deduction on account of the cost of property sold, labor costs, etc., and without any deduction on account of losses. Laws of 1935, chapter 180, p. 721, § 17, as amended by Laws of 1941, chapter 178, p. 493, § 8.

■ While one may sell his personal property under a conditional sales contract and waive his right to collect the full purchase price at the time of sale in favor of the alternative right of repossession, that waiver has no effect on the sales tax liability. There is no necessity for interpretation or construction of the language of the statute, as same is clear and unambiguous. The legislature definitely, specifically provided that the tax should be collected on the selling price of the article sold without any deduction on account of losses, and that the selling price was the consideration whether expressed in terms of money or money's worth. Clearly, the legislature provided that credits and rights constitute a basis for the computation of the tax and also specifically provided that the fact of failure of collection is not material.

The legislature, in specifically defining the word "sale" as any transfer of ownership or title to property for a valuable consideration, included within that definition "conditional sales." The authorities uniformly hold that the fact of repossession under a conditional sales contract does not entitle the taxpayer to a refund; that upon conditional sales the tax is computed on the full sale price, and upon recapture of the property for nonpayment of installments there is no refund or right

to credit. See *Montgomery Ward & Co. v. Fry*, 277 Mich. 260, 269 N. W. 166; *Wurlitzer v. State Board of Tax Administration*, 281 Mich. 558, 275 N. W. 248; *Gardner-White Co. v. Dunckel*, 296 Mich. 225, 295 N. W. 624; *Bigsby v. Johnson*, 99 P. (2d) 268, on rehearing, 18 Cal. (2d) 860, 118 P. (2d) 289. See, also, *Carter v. Slavick Jewelry Co.*, 26 F. (2d) 571, 58 A. L. R. 1043.

Counsel for appellant contend that if the legislature had intended to impose a tax upon the deferred installments of conditional sales contracts which remained unpaid after repossession of the article sold, it would have omitted from the revenue act the provision (Rem. Rev. Stat. (Sup.), § 8370-25 [P. C. § 7030-85], Laws of 1939, chapter 225, p. 993, § 12) that, in the case of installment sales,

"The commission, by regulation, may provide for the collection of taxes upon the installments of the purchase price, or amount of rental, as of the time the same fall due."

The quoted provision is permissive only, and the tax commission has never promulgated a regulation like that authorized by Rem. Rev. Stat. (Sup.), § 8370-25. If it had promulgated such a regulation, the commission would have been required under Rem. Rev. Stat. (Sup.), § 8370-16 [P. C. § 7030-76], which provides for collection of a tax on each retail sale equal to three per cent of the selling price, to include in the regulation a provision that, in the event of default, the entire tax would be due and payable immediately.

The statutory provision for collection of a tax on each retail sale equal to three per cent of the selling price and the statutory definition of "selling price" unequivocally answer in the affirmative both questions presented by this appeal.

The sales tax is payable "on the consideration, whether money, credits, rights, or other property."

When a seller takes used articles in trade, such "trade-in" constitutes a portion of the consideration paid by the purchaser to the seller and is within the literal language of the statute. It is only a part payment in property rather than in money, and this method of payment does not affect the "selling price." Had appellant purchased, paying cash therefor, used articles and later sold same, it would hardly be contended that under the statute appellant would not be required to collect from the buyer a sales tax on the selling price of that used property.

In *Montgomery Ward & Co. v. Fry,* 277 Mich. 260, 269 N. W. 166, the plaintiff appealed from a holding that the gross proceeds of a sale at retail partly in cash and partly in used merchandise is the sum of money received plus the amount allowed the purchaser for such used article. The judgment was affirmed.

In *State v. Hallenberg-Wagner Motor Co.,* 341 Mo. 771, 108 S. W. (2d) 398, the question presented was whether the sales tax was to be computed on the basis of actual cash receipts or the basis of the total selling price of each of several articles involved in a chain of transactions whereby a retailer, who accepts other merchandise in part payment of the purchase price, finally converts a given article of merchandise into cash. The supreme court of Missouri held, under a statute similar to ours, that the tax should be computed on the total selling price of the several articles. See, also, *Warshawsky & Co. v. Department of Finance,* 377 Ill. 165, 36 N. E. (2d) 233.

The authorities uniformly sustain the position of respondents that the value of the "property traded in" is a part of the selling price as defined in the statute, and that a sales tax may be exacted upon the sales price of the article taken in trade when that article is

resold. Rule 108 of the commission is valid; it is authorized by and in conformity to the sales tax statute.

■ Counsel for appellant argue that the title to Laws of 1935, chapter 180, p. 706,

"An Act relating to revenue and taxation; providing for the levy and collection of a tax or excise upon the act or privilege of engaging in business activities; providing for the levy and collection of a tax upon retail sales; . . ."

and subtitle III of that chapter, "Title III. Tax on Retail Sales," are not broad enough to cover anything other than an absolute sale, consequently the legislative definition thereunder of retail sales cannot include conditional sales.

Briefly, appellant's contention is that the title violates the constitutional requirement (Art. II, § 19, state constitution) that no bill shall embrace more than one subject, and that shall be expressed in the title. It is urged that the title of the statute fails to give reasonable notice of the subject upon which the legislature acted, that "retail sales" in ordinary usage means absolute sales, and that a legislative definition of retail sales which includes conditional sales imposes another or unusual meaning of the term "retail sales."

We held in *DeCano v. State*, 7 Wn. (2d) 613, 110 P. (2d) 627, that the legislature may, if it chooses, adopt a very broad and comprehensive title in a bill, in which case great liberality will be indulged to hold that any subject reasonably germane to such title may be embraced within the body of the bill. On the other hand, if the legislature sees fit to employ a restricted title in which the language is of specific rather than generic import, the title will not be regarded so liberally, and provisions of the bill not fairly embraced therein can not be given force.

"Generic" is defined by the lexicographers as "of or pertaining to a genus, or a class of related things." When the language employed is of generic import, it has a wide or general application. "Retail sales" is a generic term definitive of *all sales made at retail.*

The judgment is affirmed.

ROBINSON, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.